JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| The First Liberty Insurance Corporation<br>175 Berkeley Street, Boston, MA 02117 | Mark and Donna Simms<br>124 Locust Lane, Media, Pennsylvania 19063<br><br>Mary Cole-Simms<br>453 Cherokee Drive, Butler, PA 16001<br><br>Butler County Memorial Park, Inc.<br>380 Evans City Road, Butler, PA 16001<br><br>Paul Simms<br>453 Cherokee Drive, Butler, PA 16001 |

| **(b)** County of Residence of First Listed Plaintiff <u>Suffolk County, MA</u><br>(EXCEPT IN U.S. PLAINTIFF CASES) | County of Residence of First Listed Defendant <u>Delaware County, PA</u><br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE<br>LAND INVOLVED. |
|---|---|
| **(c)** Attorney's (Firm Name, Address, and Telephone Number)<br>Eric R. Brown, Esquire<br>Marshall, Dennehey, Warner, Coleman & Goggin<br>1845 Walnut Street, 18th Floor<br>Philadelpha, PA 19103 | Attorneys (If Known) |

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question (U.S. Government Not a Party)

☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury — Med. Malpractice<br>☐ 365 Personal Injury — Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 R.R. & Truck<br>☐ 650 Airline Regs.<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information Act<br>☐ 900 Appeal of Fee Determination Under Equal Access to Justice<br>☐ 950 Constitutionality of State Statutes |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** | **SOCIAL SECURITY** | |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 444 Welfare<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence<br>**Habeas Corpus:**<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt.Reporting & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act<br><br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 463 Habeas Corpus – Alien Detainee<br>☐ 465 Other Immigration Actions | ☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br><br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):

American LegalNet, Inc.<br>www.FormsWorkflow.com

Insurance Coverage Declaratory Judgment Action

| VII. REQUESTED IN COMPLAINT: | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | DEMAND $ | CHECK YES only if demanded in complaint: JURY DEMAND:  ☐ Yes  ☒ No |
|---|---|---|---|

| VIII. RELATED CASE(S) IF ANY | (See instructions): | JUDGE _____ | DOCKET NUMBER _____ |
|---|---|---|---|

DATE
4/1/10

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

American LegalNet, Inc.
www.FormsWorkflow.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

The First Liberty Insurance Corporation          :
                                                  :
                    V.                            :              Civil Action
Mark and Donna Simms, Mary Cole-
Simms and Butler County Memorial Park,
          Inc. and Paul Simms                     :              No.: _____
                                                  :

## DISCLOSURE STATEMENT FORM

Please check one box:

☐                The nongovernmental corporate party,  _____
                 , in the above listed civil action does not have any parent corporation and
                 publicly held corporation that owns 10% or more of its stock.

☒                The nongovernmental corporate party,   First Liberty Insurance Corp
                 , in the above listed civil action has the following parent corporation(s) and
                 publicly held corporation(s) that owns 10% or more of its stock:

                 _____
                 First Liberty Insurance Corp is a wholly owned subsidiary of Liberty
                 Mutual Insurance Company, which is not publicly traded
                 _____
                 _____
                 _____

4/1/10                                            _EN_
_____                                   _____
Date                                              Signature

                 Counsel for:  _Plaintiff_____

## Federal Rule of Civil Procedure 7.1 Disclosure Statement

(a)     WHO MUST FILE; CONTENTS.  A nongovernmental corporate party must file
        two copies of a disclosure statement that:
        (1)     identifies any parent corporation and any publicly held corporation
                owning 10% or more of its stock; or

        (2)     states that there is no such corporation.

(b)     TIME TO FILE; SUPPLEMENTAL FILING.  A party must:
        (1)     file the disclosure statement with its first appearance, pleading,
                petition, motion, response, or other request addressed to the
                court; and

    (2)      promptly file a supplemental statement if any requires information changes.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| The First Liberty Insurance Corporation | : | CIVIL ACTION |
| | : | |
| v. | : | |
| Mark and Donna Simms, Mary Cole- | : | |
| Simms, Butler County Mem. Pk, Inc., et al | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus-Cases brought under 28 U.S.C. §2241through §2255. ( )

(b) Social Security-Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration-Cases require to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos-Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management-Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management--Cases that do not fall into any one of the other tracks. (X)

| | | |
|---|---|---|
| 4/01/2010 | Eric R. Brown, Esquire | The First Liberty Ins. Corp. |
| Date | Attorney-at-law | Attorney for |
| 215-575-2620 | 215-575-0857 | erbrown@mdwcg.com |
| Telephone | FAX Number | E-Mail Address |

(Civ. 660) 10/02

## Civil Justice Expense and Delay Reduction Plan
### Section 1:03 - Assignment to a Management Track

(a)      The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)      In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management of Special Management. In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)      The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)      Nothing in this Plan is intended to abrogate of limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)      Nothing in this Plan is intended to supersede Local Civil Rules 3 or 7, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

## SPECIAL MANAGEMENT CASE ASSIGNMENTS
### (See § 1.02(e) Management Track Definitions of the
### Civil Justice Expense and Delay Reduction Plan)

Special management cases will usually include that class of cases commonly referred to as "complex litigation" as that term has been used in the Manuals for Complex Litigation. The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985. This term is intended to include cases that present unusual problems and require extraordinary treatment. See §0.1 of the first manual. Cases may require special or intense management by the court due to one or more of the following factors: (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition. It may include two or more related cases. Complex litigation typically includes such as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions of potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues. See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.

# UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA – DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff     175 Berkeley Street, Boston, MA  02117

Address of Defendant     124 Locust Lane, Media, PA and 453 Cherokee Drive, Butler, PA

Place of Accident, Incident or Transaction     124 Locust Lane, Media, PA
*(Use Reverse Side for Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))     Yes ☐     No ☒

Does this case involve multidistrict litigation possibilities?     Yes ☐     No ☒
*RELATED CASE, IF ANY:*

Case Number: _____     Judge _____     Date Terminated _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
Yes ☐     No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
Yes ☐     No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier number case pending or within one year previously terminated action in this court?
Yes ☐     No ☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
Yes ☐     No ☐

CIVIL: (Place ✓ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
(Please specify)

B. *Diversity Jurisdiction Cases*
1. ☒ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability – Asbestos
9. ☐ All other Diversity Cases
(Please specify)

## ARBITRATION CERTIFICATION
*(Check appropriate Category)*

I, _____, counsel of record do hereby certify:
☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
☒ Relief other than monetary damages is sought.

DATE    4/1/10         Eric R. Brown, Esquire         84530
                        Attorney-at-Law                Attorney I.D. #
**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE    4/1/10         Eric R. Brown, Esquire         84530
                        Attorney-at-Law                Attorney I.D. #

CIV. 609 (6/08)

**IN THE UNITED STATES DISTRICT COURT FOR THE OF THE EASTERN
DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| THE FIRST LIBERTY INSURANCE | : | |
| CORPORATION | : | |
| 175 Berkeley Street | : | |
| Boston, MA, 02117 | : | CIVIL ACTION |
|          Plaintiff, | : | |
| | : | No.: |
|             v. | : | |
| | : | |
| MARK AND DONNA SIMMS, | : | |
| 124 Locust Lane | : | |
| Media, PA 19063 | : | |
|          and | : | |
| MARY COLE-SIMMS, | : | |
| 453 Cherokee Drive | : | |
| Butler, PA 16001 | : | |
|          and | : | |
| BUTLER COUNTY MEMORIAL PARK, INC. | : | |
| 380 Evans City Road | : | |
| Butler, PA 16001 | : | |
|          and | : | |
| PAUL SIMMS | : | |
| 453 Cherokee Drive | : | |
| Butler, PA  16001 | : | |
|          Defendants | : | |

## COMPLAINT FOR DECLARATORY JUDGMENT

AND NOW, comes plaintiff, The First Liberty Insurance Corporation, ("First Liberty"),

by and through its undersigned counsel and hereby files this complaint for declaratory relief, and

in support thereof avers as follows:

### I.      THE PARTIES

1.  Plaintiff, The First Liberty Insurance Corporation ("First Liberty"), is a corporation

incorporated and existing under the laws of the State of Iowa, with its principal place of business

located at 175 Berkeley Street, Boston, MA, 02117.

2. Defendants, Mark and Donna Simms, are, upon information and belief, adult individuals, and husband and wife residing at the above-captioned address.

3. Defendant, Mary Cole-Simms, is, upon information and belief, an adult individual residing at the above-captioned address.

4. Defendant, Butler County Memorial Park, Inc. is upon information and belief, a Pennsylvania corporation with a business address of 380 Evans City Road, Butler, PA 16001

5. Defendant, Paul Simms is, upon information and belief, an adult individual residing at 453 Cherokee Drive, Butler, PA 16001.

## II.    JURISDICTION AND VENUE

6. This Honorable Court has jurisdiction over this matter by virtue of diversity jurisdiction pursuant to 28 U.S.C. § 1332, and an amount in controversy, exclusive of interest and costs, alleged to be in excess of $75,000.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, as the policy of insurance giving rise to this litigation was issued for a home located within this judicial district, and Mark and Donna Simms reside in this judicial district.

## III.   ACTION FOR DECLARATORY JUDGMENT

8. This is an action for declaratory judgment brought pursuant to 28 U.S.C. § 2201, *et seq.*, for the purpose of determining an actual question in controversy between the parties as described in detail herein.

## IV.    OPERATIVE FACTS

9. This matter was brought following a controversy arising under the provisions of a homeowners' insurance policy issued by First Liberty to Donna Simms as its named insured.

10. The policy in question bears policy no. H36-288-926448-007, and was in effect during the relevant time period. (A copy of the policy is attached hereto as Exhibit "A").

11. The controversy arises out of a request for a defense for a lawsuit filed by Mary Cole-Simms against First Liberty's insureds, Mark and Donna Simms, in the Court of Common Pleas of Butler County, Pennsylvania, Docket No. AD No. 09-10067 (hereinafter "the Cole-Simms action"). (A copy of the complaint in the Cole-Simms action is attached hereto as Exhibit "B").

12. A separate lawsuit was also previously filed against Mark and Donna Simms in the Court of Common Pleas of Butler County, Pennsylvania, Docket No. AD No. 08-12520 by Butler County Memorial Park and Paul R. Simms, though it is unclear whether Mark and Donna Simms have tendered their defense in that action to First Liberty (hereinafter referred to as "the BCMP" action). (A copy of the complaint in the BCMP action is attached hereto as Exhibit "C").

13. The operative facts alleged in the complaint in the Cole-Simms action are as follows:

> 9.   Butler County Memorial Park, Inc. (hereinafter "BCMP") is a corporation duly organized and promulgated pursuant to the laws of the Commonwealth of Pennsylvania, having a principal place of business address of 380 Evans City Road, Butler, Pennsylvania 16001. BCMP is actively engaged in the business of, *inter alia*, providing funeral, mausoleum and burial facilities and services to the general public and has done so since 1939.
>
> 10.  Paul Simms  has worked full-time at BCMP since 1987 and is currently the sole owner thereof.
>
> 11.  BCMP was previously operated and managed by Wanda M. Simms (hereinafter "Wanda Simms") and her husband, Anthony R. Simms.
>
> 12.  Wanda Simms is the mother of Paul Simms and Mark Simms.
>
> 13.  Cole-Simms has provided services to BCMP since 1997 on a consulting and as-needed basis at the request of Wanda Simms and Paul Simms. Cole-Simms has been formally employed by BCMP since 2007. Through her employment, Cole-Simms handles a portion of BCMP's legal issues and public relations work.
>
> 14.  In addition to her employment with BCMP, Cole-Simms also maintains a private law practice performing legal work for clients in the general Butler County area. Throughout her career, Cole-Simms,

has enjoyed a reputation as an excellent and ethical attorney both in legal circles and the Butler County community.

15.    Anthony R. Simms died in 1993. Following Anthony R. Simms' death, BCMP was operated and managed by Wanda Simms and Paul Simms, with each of them owning nearly equal shares in the company.

\* \* \* \*

18.    Mark Simms worked briefly for BCMP for brief periods in 1979, 1981 and 2005. Mark Simms has never possessed an ownership interest in BCMP.

\* \* \* \*

20.    Mark Simms most recent employment with BCMP began in September, 2005. Mark Simms was hired by Wanda Simms in order to implement a new computer and accounting system for BCMP.

21.    Mark Simms' employment was terminated by Wanda Simms on December 30, 2005 due to the following actions undertaken by mark Simms during his 2005 employment:

a.    Mark Simms engaged in a pattern of conduct designed to undermine Paul Simms' management of BCMP and to wrestle control of BCMP away from Paul Simms.

b.    Mark Simms continually engaged in a pattern of demeaning and defaming Paul Simms both personally and with regard to his operation of BCMP.

c.    Mark Simms, without authorization, searched the contents of the offices, desks and cabinets of Wanda Simms, Paul Simms and other employees and removed business records from BCMP in an effort to gather material to support Mark Simms' efforts to gain control of BCMP.

d.    Mark Simms pressured and interrogated Wanda Simms during her hospitalization following hip replacement surgery and shortly thereafter regarding her testamentary intent with regard to her ownership interest in BCMP.

22.    During Mark Simms' 2005 employment, Mark Simms made the following false statements to Wanda Simms regarding Cole-Simms:

a.    Cole-Simms controlled Paul Simms' decision making process.

4

b.   Cole-Simms was acting in her own self-economic interest to the detriment of Wanda Simms, Paul Simms and BCMP.

c.   Cole-Simms abused her prerogatives as a licensed attorney and acted in an unethical manner.

d.   Cole-Simms received unethical kickbacks from third party professionals servicing BCMP.

e.   Cole-Simms purposely tried to wrestle ownership and control of BCMP from the Simms' family.

f.   Cole-Simms encouraged Paul Simms to engage in conduct undertaken to cause dissension amount [sic] the Simms family members and to place Mark Simms in a bad and false light.

g.   Cole-Simms and Paul Simms engaged in fraudulent activities in regard to the operation of BCMP.

23.   Following his termination from BCMP, Mark Simms engaged in a course of conduct to, *inter alia*, discredit Cole-Simms to the Simms family, third party professionals associated with BCMP and the Butler community in general.  This course of conduct was designed to discredit, defame and injure Cole-Simms, with ill-will and malice. The conduct included lodging knowingly false allegations of wrong-doing on the part of Cole-Simms, including, *inter alia*:

a.   Cole-Simms encouraged and participated with Paul Simms in fraudulent activities in regard to the operation of BCMP including money laundering and income tax evasion.

b.   Cole-Simms tortuously [sic] interfered with Mark Simms' wife, Donna Simms' efforts to obtain employment with UPMC.

c.   Cole-Simms received illegal kickbacks from third party professionals rendering services to BCMP.

d.   Cole-Simms acted on behalf of BCMP even though she was unauthorized to do so.

e.   Cole-Simms acted in an unethical manner as an attorney in regard to estate planning documents executed by Wanda Simms and in allegedly tampering with the will of Ed Black.

The above-referenced course of conduct was undertaken after consultation with and the support and assistance of Donna Simms.

24. Mark Simms made the following specific knowingly false statements regarding Cole-Simms following his termination from BCMP:

a. In a May 6, 2008 letter to Bruce Simms, brother of Mark Simms and Paul Simms, Mark Simms made the following false statement regarding Cole-Simms:

> I have every right to believe that Mary was also involved in that matter and that the will was tampered with after the fact. After all, I received 0.15 percent of his estate and you got half of that. Uncle Ed, although he was frugal, I do not believe that is what his true intentions were. Finally, couple that with the statement Paul made to you that he didn't get anything from Ed's estate, but that we didn't get really anything either, and the picture becomes much clearer.

The May 6, 2008 letter was also forwarded to an attorney, Laurel Hartshorn, by Mark Simms. A copy of the May 6, 2008 letter is attached hereto as Exhibit "A". The May 6, 2008 letter was prepared after consultation with and the support and assistance of Donna Simms.

b. In a May 21, 2008 letter to BCMP's accountant, Bernie Marx, Mark Simms made the following false statement regarding Cole-Simms:

> Paul and Mary have now employed influence tactics on Wanda that are naturally crafted to discredit me and to discourage me from making these secrets known to other interested parties. Of course, some of the new schemes Mary has crafted such as the loan/lease scam on the Chrysler minivan reduces the portion of Wanda's estate that were to be for myself and my brother Bruce.

A copy of the May 21, 2008 letter is attached hereto as Exhibit "B". The May 21, 2008 letter was prepared after consultation with and the support and assistance of Donna Simms.

c. On May 5, 2008, Mark Simms prepared a document entitled "Notice of Intent to Dishonor", which contained the following false statements regarding Cole-Simms:

i. At that time, I discovered to my great surprise and dismay that Wanda has already deeded our rundown, but beloved camp to Paul, my other brother, and his wife Mary.

6

ii. Also, at that time, I learned that an unlimited power of attorney held by my brother Paul and most likely crafted with the assistance of his wife Mary, an attorney, was still in effect. The final gruesome discovery at that time was that Wanda's will was in the hands of another attorney, a former associate of Mary.

iii. I will take action that will insure both Federal and State taxing authorities are notified of the huge amounts of revenue that has been lost as a result of Paul and Mary's fraudulent activities. Indeed, a once honest business and beautiful cemetery, started by a great man, my father, is now ugly and has now become nothing more than a "front" for fraud.

The notice of Intent to Dishonor was forwarded to at least four individuals, including Bruce Simms, Phyllis Black, Jan Olson and Scott Olson. A copy of the Notice of Intent to Dishonor is attached hereto as Exhibit "C". The Notice of Intent to Dishonor was prepared after consultation with and the support and assistance of Donna Simms.

d. In an October 1, 2008 to Bruce Simms, brother of Mark Simms and Paul Simms, from Mark Simms and Donna Simms, the following false statements regarding Cole-Simms were made:

i. I'm really getting tired of getting the blame for everything while Paul and Mary continue their evil ways without any scrutiny from Mom at all.

ii. . . . Mom's "intentions" declared at that first meeting would in no way, shape, or form, ever become carried out given the fact that Paul and Mary had unlimited power-of-attorney over Mom. Of course at that first meeting, I first became aware of the camp being given to Paul and Mary in November of 1996. To this date, Mom has not provided a valid reason for this family-breaking decision.

A copy of the October 1, 2008 letter is attached hereto as Exhibit "D".

25. In addition, throughout Mark Simms' employment with BCMP in 2005, he maintained a log in which he published false statements regarding Cole-Simms (hereinafter "Log").

26. In a section of the Log entitled, "Important People with Involvement", Mark Simms summarized alleged wrongdoings or

involvement of various individuals in actions perceived by Mark Simms to be fraudulent or illegal. Within the "important People with Involvement" section of the Log, Mark Simms published the following false statements regarding Cole-Simms:

        a.   Mary Cole-Simms, Attorney-at-law (self employed): Mary essentially coordinated with the law firm that represented BCMP in the Butler Township property tax lawsuit in 2003, 2004. Mary also appears to be acting as defacto [sic] attorney for the corporation on other matters, despite the fact that she has not been authorized by the president to act on behalf of the corporation. Mary was unquestionable [sic] the initiator of the UPMC employment sandbagging scandal. Mary crafted the "cease and desist" order that was served to me by email on 12/30/2005 so that Paul would have complete control of all of the accounting activities. It is believed that although the fraud at the cemetery has been occurring for a very long time, Mary played a key role in devising new fraud schemes as well as putting pressure on Paul to increase the fraudulent activities so that their very comfortable lifestyle could be maintained without a lot of effort or pressure. Mary likely took some Qui-Tam legal courses at law school and is now able to use this information to her advantage with Paul to carry out the schemes.

        b.   Jim Berkopec, Home Remodeler, D/B/A "JB Construction": Jim was contracted by Paul Simms and Mary Cole-Simms sometime in the year 2000 for some extensive renovation work on their home involving a two story addition, wrap around deck. Bathroom, and 2 additional bedrooms. Jim also is contracted by BCMP from time-to-time for specialty work at the premises or the mausoleum but there are vaguely detailed and suspicious invoices submitted by Jim that do not reflect the actual work performed at BCMP. Jim was taking substantial cash payments from Paul for submitted invoices during the renovation work in 2000 and 2001. This effectively was laundering the cash skimmings from BCMP. Mary Cole-Simms used the excuse that Jim was working there to pay-off his legal bill as Mary had been the attorney for his wife in a divorce matter. The estimated cost of the renovation could be approximated at $30,000 to $50,000.

        c.   Obermayer, Rebmann, Maxwell & Hippel, LLP: This law firm was recommended by Mary-Cole Simms as one to handle the property tax lawsuit with Butler Township sometime in 2003. This firm was eventually contracted over a period of several months with charges for legal services

exceeding $30,000 and Mary Cole-Simms received a 10%
referral fee on all paid invoices.  In December, an Obermayer
invoice by fax came across at the BCMP office with a caption
of "corporate recapitalization."  The fax originated from the
Pittsburgh office, but had the Philadelphia office address on
the invoice.  No work beyond the property tax settlement was
ever authorized by Wanda Simms.

     d.  Daniel Cole, MD, Urologist & President:  I believe
Dan was contacted by his sister Mary Cole-Simms and played
a key part in providing her with information as to the proper
"channels" to contact in the Human Resources department at
UPMC.  Possibly, even the Chief HR officer, Gregory
Peasley was notified and involved in the matter.  Dan may or
may not have known the nature of his sister's inquiry and may
or may not have played a role in the sandbagging/blackballing
that occurred. . .

A copy of the above-referenced excerpts from the "Important
People with Involvement" section of the Log is attached hereto as
Exhibit "E".

    27.  The notes within the Log contained the following false
statements regarding Cole-Simms:

      i.    WE STRONGLY SUSPECT THAT MARY
CONTACTED HER BROTHER DAN WHO IS ON THE
BOARD OF DIRECTORS AT UPMC, AND THAT HE
INTERVENED AT THE LAST MINUTE TO INSURE
DONNA WAS DISQUALIFIED FOR APPLYING FOR
THAT POSITION SHE HAD WAITED 8 WEEKS FOR.
IT'S APPARENT THAT DAN WAS ABLE TO REVIEW
A COPY OF HER RESUME AHEAD OF TIME SO
THAT HE, THROUGH ANOTHER MANAGER, COULD
GIVE THE HR DEPARTMENT SPECIFIC REASONS
FOR DISQUALIFYING DONNA.  Paragraph 53.

      ii.    The management style of my brother Paul
had BCMP spend over $30,000 in legal fees to fight the
Butler Township tax assessment (Mary had garnished a
10% commission on these fees for referring the law firm).
Paragraph 72.

      iii.    (Note:  I wonder if Dan is really starting to
get hit with the "guilt-trip" after his nefarious deed . . .
probably done under great duress from evil Mary)
Paragraph 103.

       iv.     We also bring-up the billing just received by fax regarding a corporate recapitalization and the attorney, upon seeing this, is alarmed . . . and he too, is not sure what schemes Mary is attempting here . . . . it appears that Mary is representing our corporation without Mom's approval as Mom indicates she did not contract with Mary directly for any legal work.  Paragraph 132.

       v.     . . . [I[t appears there is no way this situation with my brother (and sister-in-law) is EVER going to work out.  The number of backstabbing incidents overwhelm even the fraudulent activities!  Paragraph 137.

A copy of the above-referenced paragraphs of the Log is attached hereto as Exhibit "F".  Cole-Simms believes the Log was disseminated by Mark Simms to several individuals, including, but not limited to, Bernie Marx, an accountant, Thomas Breth, an attorney and Laurel Hartshorn, an attorney.  The Log was prepared after consultation with and the support and assistance of Donna Simms.

      28.  The purpose and obvious and intended effect of the above-described conduct of Mark Simms and Donna Simms was to injure, defame, embarrass and humiliate Cole-Simms.

      29.  Cole-Simms suffered substantial humiliation and embarrassment relating to the actions of Mark Simms and Donna Simms and their false statements made to Simms family members, business professionals and acquaintances.

      30.  The false statements made and published by Mark Simms and Donna Simms constitute defamation *per se*.

      31.  Each and every wrongful act of Mark Simms and Donna Simms, as is more fully set forth and described herein, was undertaken with the utter disregard of the rights and interests of Cole-Simms, was reckless, willful and malicious and made with the utter disdain of the protected interests of Cole-Simms.

      32.  Cole-Simms reputation, as both an employee of BCMP and a practicing attorney, has been injured through the acts of Mark Simms and Donna Simms.

(See Exhibit "B").

14.  Count I is entitled "Intentional Infliction of Emotional Distress," and alleges that the

defendants, Mark and Donna Simms, fabricated allegations against Cole-Simms with the intent

of changing Wanda Simms's estate-planning and controlling interest in the funeral home, and

10

that the defendants acted with the egregious motives of "greed and avarice." (See Exhibit "B," ¶ 35, 37).

15. Count II alleges false light, averring that the defendants authored false allegations against the plaintiff to place her in a "knowingly false light and were intentionally and repeatedly published" to members of the public. (See Exhibit "B," ¶ 42).

16. Count III alleges defamation against defendants, Mark and Donna Simms, and claims that the publication of false allegations were "knowingly, intentionally, and repeatedly published by" defendants. (See Exhibit "B," ¶ 49).

17. The complaint in the BCMP action includes the following operative facts:

> 22. Following MAS's brief employment by BCMP in 1979 and 1981, he elected to obtain other employment because he "did not like working with old people" and it was not until 2005 that MAS was again employed temporarily by BCMP.
>
> 23. Due to his need for income and employment, WMS advised PRS that she invited MAS to once more work for BCMP in the summer of 2005 to implement a new computer and accounting system for the business.
>
> 24. In the late summer of 2005, MAS accepted the offer of employment with BCMP and began such employment in September 2005.
>
> 25. Due to his stated expertise in the area of computer networking and support, MAS initially began to assess the efficacy of BCMP's accounting systems and to formulate recommended changes or upgrades, if any.
>
> 26. Initially, MAS did not relocate his family from the Philadelphia metropolitan area, but rather, stayed with WMS in Butler and commuted home to Philadelphia on most weekends.
>
> 27. Almost immediately following his employment with BCMP, MAS began a concerted campaign to insert himself into areas of the business of BCMP, which were far beyond the scope of the services contemplated by his employment.
>
> 28. Whenever BCMP, in general, and PRS in particular, did not immediately accept and implement any of MAS' recommendations, MAS interpreted such responses as being personally motivated by PRS

and his wife Mary in an effort to denigrate MAS' skills and value to BCMP and to otherwise place him in a bad light as to WMS.

29. By the end of November 2005, MAS became obsessive and compulsive with respect to his perceived persecution by PRS and his wife Mary, and MAS began a clandestine pattern of going through the offices, cabinets and desks of WMS, PRS and the office assistant whenever he could arrange for private and secretive access to the said areas and facilities.

30. From his very beginnings with BCMP, MAS examined financial records, business organizational records, documents relating to private affairs of his mother and his brother and various and sundry other documents or records and photocopied or duplicated the same and improperly converted the same and removed such property from the premises of BCMP and his mother's home.

31. In November 2005, WMS suffered a broken hip and received a hip replacement and consequently, she was required to convalesce for a long period of time.

32. During the period of WMS' convalescence, MAS became increasingly aggressive in his unauthorized and wrongful plunder of the private records belonging to BCMP, WMS and PRS.

33. Also during the period of WMS' convalescence, she was heavily sedated as a result of pain that was secondary to the healing process and at such times MAS began a regular pattern of interrogating his mother regarding her testamentary intentions, with specific emphasis placed upon her intentions regarding ownership and control of BCMP.

34. Throughout the month of December of 2005, MAS seized every opportunity to, through misstatements and contrivance, under-mine WMS' stated intentions regarding her estate and BCMP and actively sought and obtained the assistance of friends, family and others to actively intervene and to attempt to convince WMS to minimize and even to exclude PRS from any additional ownership interest in BCMP.

35. The misstatements and contrivance referred to above include, *inter alia*, falsely accusing PRS of acts of self dealing, theft, incompetence, intemperance, lacking any work ethic, conspiring to demean and place his brother in a bad and false light and conducting the business of BCMP in an illegal manner.

36. In addition to the conduct referred to in ¶34 above, MAS also regularly and falsely advised WMS that Paul's wife Mary controlled PRS' decision making process, was acting in her self economic interest to the detriment of WMS, PRS, and BCMP. MAS also accused Mary of abusing her prerogatives as a licensed attorney, receiving unethical "kick-backs" from professionals servicing BCMP

and purposely trying to wrestle ownership and control of BCMP from the Simms' family.

37.  Since MAS' commencement of work at BCMP in 2005, he began a purposeful campaign to disparage and discredit PRS and began a system of falsely documenting actions and statements that would someday be used by MAS as evidence, *albeit* false.

38.  The wrongful activities of MAS included, *inter alia*:

    a.  wrongfully attempting to secure banking and accounting records relating to BCMP;

    b.  disseminating to third parties to the Simms' family and third parties to the business of BCMP, defamatory accusations relating to PRS and his wife, Mary, to vendors of BCMP, professionals retained by BCMP, family members and members of the general public;

    c.  regularly meeting with WMS (both at the hospital and thereafter while she was at home and recuperating) and communicating false allegations of wrongful conduct on the part of PRS and his wife Mary and on more than one occasion, engaged in such defamatory communications in the presence of others.

    d.  intentionally and with malicious purpose repeatedly asserted that PRS conducted the business of BCMP in a negligent, careless and oftentimes illegal manner, to the detriment of the business of BCMP and its customers; and

    e.  intentionally and with malicious purpose repeatedly asserted that PRS, in conjunction with the designs of his wife Mary, engaged in conduct that was undertaken for the sole purpose of causing dissension among the Simms family members and to place MAS in a bad and false light.

39.  In his continuing effort to discredit PRS and to otherwise portray him in a false light, MAS accused PRS of improper and illegal activities regarding the operations of BCMP and that these said allegations were repeatedly communicated to the bankers, the accountants and attorneys then servicing both BCMP and WMS.

40.  During the final week of December 2005, PRS received myriad indications of MAS' improper and tortuous activities and reasonably, and accurately concludes that MAS has continuously been engaged in a campaign to demean and defame PRS, both personally and with regard to his management of BCMP.  This campaign included, *inter alia*, removing business records from the offices of BCMP, surreptitiously and without permission searching the contents of the

offices, desks and cabinets of WMA, [sic] PRS, and other employees of
BCMP, attempting to procure, by guile and pretense, financial records
relating to BCMP from its agents and professionals servicing the
company and attempting to procure, also by guile and pretense, the
support for his activities from professionals servicing the company,
employees of the financial institutions servicing the company, family
members, business associates and friends.

\* \* \* \*

49. On December 30, 2005, WMS e-mailed MAS to advise him
of the decision to sever his employment with BCMP and to direct that
he cease and desist from any further involvement in the business of
BCMP and to cease representing himself to the public as having any
relationship with BCMP.

50. After his termination from BCMP, MAS and DS believed
that PRS and his wife Mary conspired to demean MAS with respect to
both his business presence and his familial presence.

51. At all times material hereto and prior to his termination
from BCMP, MAS' wife Donna actively participated in the plots and
schemes to discredit PRS and his wife Mary to the Simms family and
business circle of relationships and to wrestle control of the Simms
family business and the estate of WMS for their sole benefit and gain.

52. Following the termination of MAS from BCMP, MAS and
his wife Donna, design [sic] and implemented a course of conduct to
further discredit, defame and injure, with ill-will and malice and that
this course of conduct included, *inter alia*, lodging knowingly false
allegations of wrongdoing on the part of PRS and BCMP with State and
local politicians and regulators, the Internal Revenue Service and the
Pennsylvania Real Estate Commission.

53. The purpose and obvious and intended effect of such course
of conduct, as is described immediately above was to injure, defame,
embarrass and humiliate PRS and BCMP.

54. As was their plan, MAS and his wife Donna caused to file
myriad allegations and complaints with the Internal Revenue Service
and the Pennsylvania Real Estate Commission and these complaints
were untrue and unsubstantiated and were made with full knowledge
that they were untrue and unsubstantiated.

\* \* \* \*

60. The continuing false statements made by and published by
MAS and DS constitute defamation *per se*.

61. Each and every wrongful act of the Defendants herein, as is
more fully set forth and described herein, were undertaken with the utter

disregard of the rights and interests of the Plaintiffs, were reckless, willful and malicious and made with the utter disdain of the protected interests of the Plaintiffs.

(See Exhibit "C").

18. Count I of the BCMP complaint alleges Intentional Infliction of Emotional Distress on behalf of Paul Simms against Mark Simms alleging Mark Simms "fabricated the false and malicious allegations regarding PRS after their scheme was disclosed with the obvious and intended effect [ ] obtaining revenge and retribution against PRS, BCMP and anyone else that failed to support MAS." (See Exhibit "C", ¶65).

19. Count II alleges False Light on behalf of Paul Simms and BCMP against Mark Simms alleging Mark Simms contrived false allegations "and the false messages contained therein placed PRS and BCMP in a knowingly false light and were intentionally and repeatedly published by the Defendants . . . ". (See Exhibit "C", ¶71).

20. Count III alleges Defamation against Mark Simms alleging the false statements "were knowingly and were intentionally and repeatedly published by the Defendants . . . ". (See Exhibit "C", ¶78).

21. Count IV alleges Commercial Disparagement, alleging the defendants unlawful acts directed towards the plaintiffs "with malice aforethought and with intent to injure." (See Exhibit "C, ¶94).

22. Count V alleges Civil Conspiracy on behalf of Mark and Donna Simms.

23. Each of the counts alleges the damages set forth in paragraph 56 and 59 of the complaint.

24. The policy includes the following grant of coverage:

COVERAGE E – Personal Liability

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

> 1.      Pay up to our limit of liability for the damages for which the "insured" is legally liable. Damages include prejudgment interest awarded against the "insured"; and

> 2.      Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the "occurrence" equals our limit of liability.

(See Exhibit "A").

25. The policy includes the following relevant definitions:

> 1.      "Bodily injury" means bodily harm, sickness, or disease, including required care, loss of services, and death that results.

> \*   \*   \*   \*

> 5.      "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

>> a.      Bodily injury; or

>> b.      Property damage.

> 6.      "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

(See Exhibit "A").

26. The policy also includes an Endorsement entitled "Special Provisions-Pennsylvania," which amends Exclusion (a) of the liability section of the policy to read as follows:

> 1.      Coverage E-Personal Liability and Coverage F-Medical Payments to Others do not apply to "bodily injury" or "property damage":

>> a.      Which is expected or intended by one or more "insureds";

16

(See Exhibit "A").

27. The complaints in the Cole-Simms action and the BCMP action for which the insureds have sought our defense do not allege an "occurrence," as all of the allegations allege that Mark and Donna Simms made knowingly false statements, intending to harm the underlying plaintiffs.

28. The complaints in the Cole-Simms action and the BCMP action do not allege any "bodily injury" as the only damages sought are for the underlying plaintiff's embarrassment and loss of reputation. (See Exhibit "B", ¶¶ 29, 32, Exhibit "C" ¶¶ 56, 59).

29. The complaints in the Cole-Simms action and the BCMP action do not allege any "property damage," as none of the damages sought are for any physical injury to tangible property.

30. The complaints in the Cole-Simms action and the BCMP action are excluded pursuant to the Exclusion for "expected or intended injury by one or more 'insureds'," as the complaint alleges that Mark and Donna Simms had spread false rumors with the specific intent to harm the underlying plaintiffs.

31. Based upon the foregoing, plaintiff, The First Liberty Insurance Corporation, respectfully request this Honorable Court enter an order:

      a.  Declaring that the operative conducts and events giving rise to the claim in the underlying action do not constitute an "occurrence," as that term is defined by the policy;

      b.  Declaring that the operative conduct and events giving rise to the claim in the underlying action do not constitute "bodily injury" or "property damage," as defined by the policy;

      c.  Declaring that plaintiff, First Liberty, owes no obligation to provide a defense or indemnity to Mark and Donna Simms for the civil action brought by Mary Cole-Simms, in the Court of Common Pleas of

Butler County, Pennsylvania; <u>Mary Cole-Simms v. Mark A. Simms & Donna Simms</u>, AD No.: 09-10067; and

d. Declaring that plaintiff, First Liberty, owes no obligation to provide a defense or indemnity to Mark and Donna Simms for the civil action brought by Paul Simms and Butler County Memorial Park, captioned <u>Paul Simms and Butler County Memorial Park v. Mark and Donna Simms</u>, in the Court of Common Pleas of Butler County, Pennsylvania, Docket No. AD No. 08-12520

e. Granting such other relief as this Honorable Court deems appropriate.

WHEREFORE, plaintiff, The First Liberty Insurance Corporation, respectfully requests

that this Honorable Court enter judgment in its favor and against all other parties.

Respectfully submitted,

**MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN**

WILLIAM C. FOSTER, ESQUIRE
ERIC R. BROWN, ESQUIRE
Attorney Id. No.: 85430
Attorney for plaintiff,
The First Liberty Ins. Corporation,
1845 Walnut Street
Philadelphia, PA 19103
215.575.2761/215.575.0856
erbrown@mdwcg.com

Dated: 4/1/10

01/5534861.v1